United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 13, 2003**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No.  02-20061

_____


ALLEN E. THARLING,

Plaintiff - Appellant,

VERSUS

CITY OF PORT LAVACA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before: DAVIS, CYNTHIA HOLCOMB HALL[*], and EMILIO M. GARZA,
Circuit Judges.

HALL, Circuit Judge:

Allen Tharling appeals the district court's grant of
judgment as a matter of law in favor of the City of Port Lavaca
("the City").  Tharling was terminated from his position as
police chief following a series of events that included
Tharling's investigation of possible misconduct on the part of
both the City Council and the City's Chief Building Official, and
a confrontation between Tharling and the City Manager.  Tharling
brought suit against the City, alleging violations of the First

_____

[*]U.S. Circuit Judge of the Ninth Circuit, sitting by
designation.

Amendment and the Texas Whistleblower Act. After Tharling had presented his evidence to the jury, the district court granted the City's motion for judgment as a matter of law as to both claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we AFFIRM.

## FACTS

The City hired Tharling as its police chief in 1994. In late 1999, Tharling began to investigate allegations that members of the City Council were meeting and taking action without a full quorum present and without notice to the public, in violation of the Texas Open Meetings Act, Tex. Gov't Code § 551.001 et seq. Tharling's investigation was the subject of "common gossip" around City Hall.

Barbara Gibson became Acting City Manager in November 1999. Approximately one month later, Tharling informed both Gibson and then-Mayor Tiney Browning[1] that he believed several members of the City Council had violated the Opening Meetings Act. At this time, Gibson suggested that Tharling establish a police department policy whereby investigation of public officials would be handled by an external agency. Despite Gibson's suggestion, Tharling continued his investigation. On June 12, 2000, Tharling submitted a report to the Attorney General alleging that the City

---

[1]In May 2000, Alex Davila replaced Browning as Mayor of Port Lavaca.

2

Council had violated the Texas Open Meetings Act.

Shortly thereafter, Tharling became aware of allegations that the Chief Building Official of the City, Ed Harrington, had impersonated a police officer. Tharling initiated an investigation, during which he spoke with several eyewitnesses who had seen Harrington leave a Denny's restaurant in Texas City, Texas without paying, claiming that it was his prerogative as a police officer. Subsequently, Tharling submitted a written report regarding the Denny's incident to Gibson. Gibson directed Tharling to discontinue his investigation, and informed Tharling that the matter had already been resolved.[2] Shortly thereafter, Tharling reported the Harrington incident to the Texas City Police Department.

During this time, Ed Harrington's wife was working as Tharling's secretary. On July 21, 2000, Tharling learned that Mrs. Harrington was intercepting telephone messages related to Tharling's investigation of her husband. Tharling immediately suspended Mrs. Harrington and removed her office key from her key ring. After Mrs. Harrington filed a grievance regarding the incident, Gibson summoned Tharling to her office. Gibson ordered Tharling to return Mrs. Harrington's key. Tharling refused to do so, and informed Gibson that Mrs. Harrington was no longer his secretary. Gibson was displeased with Tharling's demeanor during

---

[2]Harrington was suspended in connection with the incident.

3

this exchange, and subsequently ordered Tharling to return to her office for further discussion. Tharling told Gibson that the meeting would have to be postponed until the following morning because he was feeling ill.

The next morning, Gibson presented Tharling with a memorandum of suspension. At this time, Gibson and Tharling had an unpleasant exchange during which Tharling referred to Gibson as "Hitler." At a City Council meeting on July 31, 2000, Gibson recommended that the City Council vote to terminate Tharling's employment for insubordination. A unanimous City Council voted to adopt Gibson's recommendation. Tharling appealed, and on August 14, 2000, five of six council members voted to reject Tharling's appeal.[3]

Tharling filed suit against the City on October 24, 2000. The City's motion for summary judgment was denied on December 2, 2001. The next day, a jury was empaneled and the trial began. After the close of Tharling's evidence, the City made an oral motion for judgment as a matter of law as to both claims.[4] The

_____

[3]The dissenting Council member, Ken Barr, testified at trial that his vote was driven by "sympathy" for Tharling.

[4]Tharling's contention that the City's motion for directed verdict pertained only to the Whistleblower component of the action is without merit. Council for the City specifically referenced the First Amendment claim in his argument. Moreover, the City argued that Tharling had not presented sufficient evidence of knowledge on the part of the City Council, a component of the First Amendment claim. Given the "liberal spirit" with which we approach Rule 50, see Serna v. City of San Antonio, 244 F.3d 479, 481-82 (5th Cir. 2001), this was more than

4

court granted the motion, and entered judgment on December 10, 2001.  This appeal timely followed.

STANDARD OF REVIEW

We review *de novo* a district court's ruling on a motion for judgment as a matter of law.  Anthony v. Chevron USA, Inc., 284 F.3d 578, 583 (5th Cir. 2002).  Under this standard, we will affirm a directed verdict only if, viewing the evidence presented at trial in the light most favorable to the non-movant,  "there is no legally sufficient evidentiary basis for a reasonable jury" to enter a contrary verdict.  Id. at 582-83 (quoting Fed. R. Civ. P. 50(a)(1)).

THE FIRST AMENDMENT CLAIM

A First Amendment retaliation claim has four elements: (1) the plaintiff must suffer an adverse employment decision; (2) the plaintiff's speech must involve a matter of public concern; (3) the plaintiff's interest in commenting on matters of public concern must outweigh the defendant's interest in promoting efficiency of the public services it performs; and (4) the plaintiff's speech must have substantially motivated the defendant's action.  Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999).  The City argued in its motion for judgment as a matter of law that Tharling's evidence was insufficient to prove the fourth requirement -- a requisite

---

sufficient basis for the district court to rule on both claims.

5

causal relationship between Tharling's speech and his subsequent termination.

Where, as here, an action against a municipality is premised on 42 U.S.C. § 1983, "direct liability is appropriate only when an injury is inflicted by lawmakers or those whose edicts and acts may fairly be said to represent official policy." Worsham v. Pasadena, 881 F.2d 1336, 1339 (5th Cir. 1989) (citing Monell v. City of New York Dep't of Social Services, 436 U.S. 658, 694 (1978) (internal quotation marks omitted). Accordingly, a reasonable jury could not return a verdict in Tharling's favor unless he presented evidence that an official policy-making authority rendered an adverse employment decision against him, and that such decision was substantially motivated by Tharling's speech on matters of public concern.

The existence of official policymaking authority is a question of law to be decided by the court. Worsham, 881 F.2d at 1340 n. 8. The Port Lavaca charter provides that "[t]he chief of police shall be appointed or removed by the City Manager with the approval of [sic] two-thirds majority of the council." Pursuant to the city charter, while the City Manager had authority to "remove" Tharling, removal could not become final until approved by the City Council. Thus, the City Council was the final policymaker for purposes of Tharling's termination. See Worsham, 881 F.2d at 1340-41 (holding that local law providing for

6

"meaningful review" of employment decisions by the City Council renders the City Council the final policymaker).[5]

Because the City Council is the relevant policymaking authority, Tharling's First Amendment claim rests on whether the City Council's July 31, 2000 termination vote was substantially motivated by Tharling's free speech activities.[6] The City contends that Tharling's evidence was insufficient to permit a reasonable jury to reach this conclusion. We agree.

At trial, Tharling presented only two pieces of evidence relevant to whether the City Council was aware, prior to July 31, 2000, that he had made allegations of misconduct on the part of either Ed Harrington or the City Council itself. First, Tharling, elicited testimony from Gibson that Tharling's allegations against the City Council were the subject of "common gossip" around City Hall. Port Lavaca City Council members, however, work full-time private sector jobs and rarely enter City

---

[5] Tharling's argument that Gibson was an "agent" of the City Council is without merit. The Supreme Court has explicitly held that vicarious liability is "incompatible with the causation requirement set out on the face of § 1983." City of St. Louis v. Praprotnik, 485 U.S. 112, 122 (1988).

[6] Tharling also contends that the City Council's August 14, 2000 denial of appeal is an actionable "adverse employment decision." However, Tharling's argument is foreclosed by the principle that an employee cannot place himself in a better position as a result of exercising his right to free speech than he would have been in if he had not spoken. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 285 (1977) (articulating this principle in the context of a refusal to rehire).

Hall during working hours. Thus, the connection between "gossip" and actual knowledge on the part of the City Council is tenuous, at best. Gibson's testimony was therefore insufficient to permit a reasonable juror to conclude that City Council members were aware of Tharling's allegations prior to their termination vote.

In addition, Tharling testified that he met with an unnamed City Council member in 1999 and "went through some of the issues with him of what some of the witnesses' complaints were." Tharling further testified that, following this discussion, Gibson advised Tharling that the City Council was interested in creating an ordinance that would prohibit the police department from investigating public officials. For the purpose of a motion for judgment as a matter of law, we assume the veracity of both contentions. However, neither Tharling's role in an investigation nor his desire to continue an investigation is "speech" within the meaning of the First Amendment. Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir. 1993). Notice to the City Council that Tharling, the City's police chief, was conducting an investigation is not tantamount to notice that Tharling made allegations of misconduct. Similarly, notice that unnamed witnesses had lodged complaints against the City Council is not tantamount to notice that Tharling himself made any allegations. Thus, Tharling's testimony was insufficient to

8

permit the conclusion that any members of the City Council had notice of Tharling's protected speech at the time of the termination vote.

It is axiomatic that a party cannot be "substantially motivated" by a circumstance of which that party is unaware. The evidence presented at trial did not permit a reasonable jury to conclude that the City Council was aware of Tharling's allegations against either the council itself or the City's Chief Building Official prior to its July 31, 2000 termination vote. For this reason, no reasonable jury could have concluded that Tharling's speech substantially motivated the City Council's decision to terminate his employment. The district court properly granted judgment as a matter of law in favor of the City.

### THE TEXAS WHISTLEBLOWER ACT CLAIM

In order to prevail under the Texas Whistleblower Act, a plaintiff must demonstrate: 1) he is a public employee; 2) he acted in good faith in making a report; 3) the report involved a violation of law by an agency or employee; 4) the report was made to an appropriate law enforcement authority; and 5) he suffered retaliation. Duvall v. Texas Dep't of Human Services, 82 S.W.3d 474, 478 (Tex. App. 2002); Tex. Gov't Code § 554.002. The parties in the instant case do not dispute that a reasonable jury could conclude that Tharling was a public employee who reported a

9

violation of law.  Similarly, the City does not contend that Tharling acted in bad faith.  Thus, we address only whether Tharling's reports were directed to appropriate law enforcement authorities and, if so, whether Tharling experienced retaliation as a consequence of such reports.

## 1.  "Appropriate Law Enforcement Authority"

The Texas Whistleblower Act was amended in 1995 to define "appropriate law enforcement authority" as a government official or government entity that "an employee in good faith believes is authorized to regulate under or enforce the law alleged to be violated in the report or to investigate or prosecute a violation of the criminal law."  Tex. Gov't Code § 544.002(b).[7]  Otherwise stated, the Act requires Tharling to show that "he honestly believed he was reporting the perceived violation to an authority within an entity which could regulate under or enforce the law in issue or investigate or prosecute a criminal offense and, moreover, that this belief was objectively reasonable."  Duvall, 82 S.W.3d at 480.

In the "appropriate law enforcement authority" inquiry, "the particular law the public employee reported violated is critical

---

[7] Prior to 1995, the Act did not define "appropriate law enforcement authority" and caselaw supplied a broad definition. See Castaneda v. Texas Dep't of Agriculture, 831 S.W.2d 501, 504 (Tex. App. 1992) ("any entity with the capacity through legal process or otherwise to take remedial action").  As noted in Duvall, Castaneda and other pre-1995 cases have been superceded by the amended Act.  Duvall, 83 S.W.3d at 479.

10

to the determination." Tex. Dep't of Transp. v. Needham, 82 S.W.3d 314, 320 (Tex. 2002). Tharling alleges that he was retaliated against for reporting Ed Harrington's alleged impersonation of a police officer and for reporting the City Council's alleged violations of the Texas Open Meetings Act, Tex. Gov't Code § 551.001 et seq. The City is entitled to judgment as a matter of law unless a Tharling reported one or both of these allegations to an appropriate law enforcement authority.

Tharling argues that he reported violations of the Texas Open Meetings Act to Gibson, former Mayor Tiney Browning, and the Attorney General. Therefore, we must decide whether Tharling presented evidence that he reasonably believed that one or more of these parties had power to regulate, enforce, investigate or prosecute under the Texas Open Meetings Act.

The Open Meetings Act provides for both civil and criminal penalties. See Tex. Gov't Code § 551.142 (an "interested person" may bring an action to enjoin violations of the Act); Tex. Gov't Code § 551.144 (knowing violation by a member of a governmental body is a criminal offense). With respect to the civil provisions, the statute is somewhat unusual in that it permits virtually any "interested party" to bring an action to enjoin violations. Tex. Gov't Code § 551.142. Texas courts have adopted "an extremely broad interpretation regarding who constitutes an 'interested person.'" Matagorda County Hosp. Dist. v. City of Palacios, 47 S.W.3d 96, 102 (Tex. App. 2001).

11

However, the Texas Whistleblower Act requires that an "appropriate law enforcement entity," be "a part of a state or local governmental entity or of the federal government." Tex. Gov't Code § 554.002. Thus, the fact that Gibson and the mayor could enforce the Open Meetings Act in their personal capacities does not render them "appropriate law enforcement entities." The Act's criminal provision, similarly, does not empower a City Manager or mayor to regulate, enforce, investigate or prosecute. Tharling presented no evidence at trial that he had a reasonable belief to the contrary. On appeal, he merely asserts that Gibson had disciplinary authority. This assertion is entirely irrelevant to whether Tharling reasonably believed that Gibson had power to regulate, enforce, investigate or prosecute violations of the Open Meetings Act. See Needham, 82 S.W.3d at 320 ("law enforcement authority" does not encompass persons or entities who merely have the power to discipline employees for illegal conduct).

Although neither Gibson nor former mayor Tiney Browning are law enforcement authorities, the Attorney General's office is empowered to investigate and prosecute violations of the Act. Accordingly, the report to the Attorney General was properly made to "an appropriate law enforcement authority" and can serve as the basis for a claim under the Texas Whistleblower Act.

In addition to the alleged Open Meetings Act violation, Tharling also made several reports regarding illegal conduct on

12

the part of the City's Chief Building Official, Ed Harrington. Tharling reported Harrington's alleged impersonation of a police officer to Gibson, the Texas City police, and the Texas Board of Plumbing Examiners. As discussed above, Gibson's authority to discipline does not render her a law enforcement authority. See Needham, 82 S.W.3d at 320. Similarly, there is no evidence that the Board of Plumbing Examiners has authority to regulate, enforce, investigate or prosecute unauthorized impersonations of police officers. By contrast, however, the Texas City Police Department is charged with enforcing the law in Texas City, where the alleged violation occurred. Thus, the Texas City Police Department is an appropriate law enforcement authority within the meaning of the Texas Whistleblower Act.

## 2. Retaliation

Having determined that both Tharling's report to the Attorney General and his report to the Texas City Police Department were reports to appropriate law enforcement authorities, we must determine whether the City took adverse personnel action against Tharling as a result of either report. While the Texas Whistleblower Act does not explicitly require an employee to prove a causal link between the report and the subsequent discrimination, the Texas Supreme Court has held that plaintiff must prove causation by a preponderance of the evidence. City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex.

13

2000).

Tharling asserts that his reports of misconduct on the part of the City Council and the Chief Building Official caused the City to retaliate by terminating his employment. Tharling presented neither direct nor circumstantial evidence that *any* City officials were aware of the report to the Attorney General prior to his termination. However, Tharling testified that Gibson was aware of his report to the Texas City Police Department. Thus, the vitality of Tharling's Whistleblower claim depends on whether a reasonable jury could conclude that Tharling was subject to an adverse employment action as a result of Gibson's knowledge of Tharling's report to the Texas City Police Department.

In the First Amendment context discussed *supra*, a City cannot be liable for the retaliatory acts of its employees unless those employees have final policymaking authority. However, the Texas Whistleblower Act does not impose such a restriction on municipal liability. See, e.g., City of San Antonio v. Heim, 932 S.W.2d 287, 293 (Tex. App. 1996) (noting that the Whistleblower Act protects employees from, *inter alia*, the acts of individual supervisors). Thus, the City's liability could arguably be premised on Gibson's decision to suspend, and later to recommend that the City Council terminate, Tharling's employment.

However, we reject this argument for two reasons. First,

14

Tharling waived the issue of whether his suspension violated the Whistleblower Act by failing to address it in his opening brief. See Lockett v. EPA, 319 F.3d 678, 684 n.16 (5th Cir. 2003) (issues not raised in the opening brief are deemed waived). Second, although a reasonable jury could conclude that Gibson's recommendation was based in part on her knowledge of the Texas City Police Department report, the City Council had the opportunity to review the facts underlying Gibson's recommendation to terminate Tharling at its July 31, 2000 hearing. After doing so, the council voted to terminate Tharling for insubordination. There is no evidence that the City Council was aware of any reports made by Tharling to authorized law enforcement authorities at the time it made the termination decision. Texas courts have held in similar circumstances that even if a recommendation to terminate was retaliatory in nature, subsequent independent review of the facts followed by ratification breaks the chain of causation. See Zimlich, 29 S.W.3d at 70 (citing cases).

Accordingly, there was no basis for a reasonable jury to find a causal link between Tharling's termination and either his report to the Attorney General or his report to the Texas City Police Department. The district court properly granted the City's motion for judgment as a matter of law as to Tharling's Texas Whistleblower Act claim.

15

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.