**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 18, 2012

No. 11-20310

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff-Appellant

v.

JOHN BUTLER, also known as Big John; WILLIAM HORNBEAK, also known as Pookie; JAMINE LAKE, Fresh, also known as Jamie; ANDRE MCDANIELS, also known as Dre; RONNIE PRESLEY, also known as Pimpin, also known as PI

Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CR-453-1

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

This is an interlocutory appeal in which the government challenges the district court's order suppressing evidence obtained from a warrantless wiretap, a warrantless cell phone search, and a warrantless car search. The district court erred in each of these instances. Accordingly, we vacate the suppression order and remand for further proceedings.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-20310

## BACKGROUND

On January 24, 2011, Defendant-Appellees John Butler, William Hornbeak, Jamine Lake, Andre McDaniels, and Ronnie Presley were charged with participating in a human trafficking enterprise compelling women and children to engage in prostitution. Specifically, the defendants were charged with conspiracy; sex trafficking by force, fraud, or coercion; transportation; sex trafficking of children, transportation of minors; and coercion and enticement, in violation of 18 U.S.C. §§ 371, 1591(a)(1) and 1591(a)(2) and 2, 2421, 2422(a), and 2423(a). The underlying investigation began in 2005. The Vice Division of the Houston Police Department and the Federal Bureau of Investigation collaborated in response to complaints that minor children were being forced to prostitute themselves in Houston area brothels.

On November 29, 2006, Houston Vice Division police officers obtained an advertisement with a photo of a female, B.S.R., who officers identified as a 17-year-old girl. As part of a sting operation, an undercover officer called B.S.R. through one of the advertisements and she arranged a "sex date" with him at a specific hotel in Houston. On December 5, 2006, William Hornbeak drove B.S.R. to the designated hotel where she left the car and proceeded to the agreed-upon room to meet the undercover officer. In the hotel room, B.S.R. agreed to perform a sex act with the undercover officer in exchange for a fee. She then called Hornbeak, who was waiting for her in his car in the hotel parking lot. Officers arrested B.S.R. in the hotel room for engaging in prostitution. Hornbeak repeatedly called B.S.R. from his car. When she did not answer the phone, Hornbeak went to the hotel room where the officers arrested Hornbeak for transporting another for unlawful or immoral purposes.

Upon his arrest, officers seized Hornbeak's cell phone and searched the recently made and received calls, as well as the contact list on the phone. They did so without a warrant. Officers also conducted a search of Hornbeak's car

No. 11-20310

before having it towed from the scene. Incriminating evidence found in Hornbeak's car included boxes of condoms, a copy of a birth certificate for B.S.R., and accounting records and credit card charge receipts for a prostitution business.

On March 28, 2007, United States District Judge Ellison authorized the interception of wire communications to and from Hornbeak's cell phone for a period of 30 days. On May 14, 2007, United States District Judge Hittner authorized a renewed interception of wire communications to and from Hornbeak's cell phone and defendant Andre McDaniels's cell phone.

Defendants-Appellees jointly moved to suppress the wiretap evidence, while Hornbeak so moved as to the cell phone and car searches. The trial court, United States District Judge Hughes, took up their motions during a pretrial conference on March 14, 2011, and ruled on it as a matter of law.

Here, the government appeals the district court's ensuing one-page March 21, 2011 order suppressing all of this evidence. (The government does not contest suppression of evidence following a warrantless search of Hornbeak's house.) On May 5, 2011, this court granted the government's Emergency Motion to stay the criminal trial and the setting of further pretrial proceedings in the district court, pending the resolution of this appeal. This court has appellate jurisdiction pursuant to 28 U.S.C. §§ 1291 and 3731.

## DISCUSSION

1. We first consider whether the district court erred in suppressing the evidence obtained from the government's wiretaps. This court reviews the issuing court's wiretap order for clear error, *see United States v. Tomblin*, 46 F.3d 1369, 1376 (5th Cir. 1995), but reviews *de novo* the district court's conclusion that "necessity," as required by 18 U.S.C. § 2518(1)(c), was not met. *See United States v. Edwards*, 303 F.3d 606, 619 (5th Cir. 2002); *United States*

*v. Smith*, 273 F.3d 629, 632 (5th Cir. 2001) (holding that a legal conclusion on a motion to suppress is reviewed *de novo*).

Two district judges separately authorized the interception of wire communications to and from Hornbeak's phone. Four years later, the assigned trial judge granted Defendant-Appellees' joint motion to suppress the evidence obtained from the wiretaps. The court announced during the pretrial conference on March 14, 2011 that the government could have continued using other investigative techniques, which the court believed would have been productive and fruitful, and that the government's wish to "expand its investigation" was an unlawful basis for the wiretaps. The trial court erred in overruling the other judges' well-supported wiretap authorizations.

Wiretap applications must comply with the procedures outlined in 18 U.S.C. § 2518(1)(c). This statute provides that an application for authorization to intercept wire communications shall include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" *Id.* 18 U.S.C. § 2518(1)(c) is "a statutory 'necessity requirement' designed to insure that 'wiretapping is not resorted to in a situation in which traditional investigative techniques will suffice to expose the crime.'" *United States v. Guerra-Marez*, 928 F.2d 665, 669–70 (5th Cir. 1991) (*citing United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984)).

The government offered 64- and 100- page affidavits to the judges who issued the wiretap orders. These explained in considerable detail why traditional investigative techniques had not uncovered the full scope of the conspiracy; the limitations of techniques that had been used; and the type of evidence that might be sought from wiretaps.

Defendant-Appellees attempt to support suppression, arguing that the government has not made "any reference to specific assertions of fact that any

investigative procedure 'had been tried and failed or reasonably appeared to be unlikely to succeed if tried or to be too dangerous.'" However, this court has held that, "[i]t is enough if the affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves." *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978). The government satisfied this standard by explaining in its affidavits that, despite various attempts, it had not been able to infiltrate the infrastructure of this sex trafficking operation, specifically noting that officers were unable to determine (1) the location(s) of the profits earned, (2) the resources used to evade detection by law enforcement, (3) the methods of control used on the victims, (4) the extent of Defendant-Appellees' intrastate transportation methods, or (5) the identities of other possible victims.

Second, Defendant-Appellees cite the success of the government's investigation prior to the wiretap orders to contend that the government should not have been allowed to "expand" its investigation to the use of a wiretap. However, "the purpose of § 2518(1)(c) is not to foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." *Webster*, 734 F.2d at 1055. "What is required is a showing that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time." *United States v. Krout*, 66 F.3d 1420, 1424–25 (5th Cir. 1995) (internal quotation marks and citations omitted). Here, the government's investigation began in 2005, but the government did not resort to applying for the wiretaps until two years later. At the pretrial conference, the district court opined that other investigatory techniques "may have been less convenient or less confessional than a wiretap, but that doesn't make it a practical impossibility to get the information other than through the wiretap." To repeat, the statutory "necessity" requirement does not require the government to show "that 'every

No. 11-20310

other imaginable mode of investigation would be unsuccessful.'" *United States v. Guerra-Marez*, 928 F.2d 665, 669–70 (5th Cir. 1991) (citations omitted).

Moreover, this court has repeatedly upheld the issuance of a wiretap authorization where, as in this case, the government sought to expand its investigation into the full scope of a criminal enterprise, and traditional investigative techniques, though productive of some evidence, could not reveal that scope. *See United States v. Kelley*, 140 F.3d 596, 604–06 (5th Cir. 1998) (upholding denial of motion to suppress wiretap evidence where, despite investigative efforts, the government had uncovered information about the drugs' origin and the participants' identities, but "was never able to determine the source and volume of the trade"); *Krout*, 66 F.3d at 1424–25 (upholding denial of motion to suppress wiretap evidence where application affidavits "contained detailed accounts of the investigative techniques that were used by the agencies" yet "asserted that informants or undercover agents could not infiltrate the conspiracy at high enough level to obtain sufficient evidence"); *Guerra-Marez*, 928 F.2d at 669–71 (upholding denial of motion to suppress wiretap evidence where, "[a]lthough other investigative techniques had been employed, gaps in the government's case were evident," including inability to show a large-scale conspiracy).

The district court incorrectly enunciated "practical impossibility" and "no investigative expansion" standards for evaluating the "necessity" for wiretaps. The government made a sufficient showing of necessity in line with this circuit's case law.

2. We next consider whether the district court erred in suppressing the evidence obtained from the warrantless search of Hornbeak's cell phone, which was on his person, incident to his 2006 arrest.

"In considering a ruling on a motion to suppress, we review the district court's factual findings for clear error and its legal conclusion, including its

ultimate conclusion as to the constitutionality of the law enforcement action, *de novo.*" *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002) *(citing United States v. Carreon-Palacio*, 267 F.3d 381, 387 (5th Cir. 2001)).  The district court drew a legal conclusion that the warrantless search of the phone's call data was unreasonable.  *See United States v. Curtis*, 635 F.3d 704, 711 (5th Cir. 2011) (reviewing *de novo* the search of the contents of defendant's cell phone incident to a lawful arrest), *cert. denied*, 132 S. Ct. 191 (2011).

This conclusion, unexplained by the court, directly contradicts *United States v. Finley*, 477 F.3d 250 (5th Cir. 2007), and *United States v. Curtis*, 635 F.3d 704 (5th Cir. 2011), *cert. denied*, 132 S. Ct. 191 (2011).  *Finley* held that no warrant is required for a search of an arrestee's cell phone, including text messages and call records, incident to lawful arrest. 477 F.3d at 259–60. Officers arrested Finley at the scene of a traffic stop, searched his person and seized a cell phone from his pocket. *Id.* at 254.  The officers retrieved call records and text messages in the search of Finley's cell phone. *Id.*  In *Curtis*, we relied on *Finley* to hold that an officer could search a defendant's cell phone, including text messages, incident to his lawful arrest. 635 F.3d at 711–13 (holding that "*Finley* authorizes a police officer to search the electronic contents of a cell phone recovered from the area within an arrestee's immediate control").

3. Finally, we consider whether the district court erred in suppressing the evidence obtained from the search of Hornbeak's vehicle following his 2006 arrest.

As discussed above, we review the district court's legal conclusions *de novo. Chavez*, 281 F.3d at 483; *Carreon-Palacio*, 267 F.3d at 387.  Because the facts regarding the search of Hornbeak's car are undisputed, the only issue presented here is whether it was "reasonable" for officers to believe Hornbeak's car contained evidence pertinent to his arrest.

No. 11-20310

The government contends that the warrantless search was justified based on the *Gant* "offense of arrest" doctrine. *Arizona v. Gant* expressly held that a warrantless search of a vehicle incident to arrest is permissible "when it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle." 556 U.S. 332, 129 S. Ct. 1710, 1719 (2009) (quotation omitted). Justice Scalia, who supplied the critical fifth vote for the majority, articulated the point somewhat more broadly: " . . . a vehicle search incident to arrest is *ipso facto* "reasonable" only when the object of the search is evidence of the crime for which the arrest was made, <u>or of another crime that the officer has probable cause to believe occurred.</u>" 129 S. Ct. at 1725 (Scalia, J., concurring) (emphasis added). In this case, officers searched Hornbeak's car after he was arrested for transporting B.S.R. for unlawful or immoral purposes. The government contends they "had reason to believe that evidence of Hornbeak's unlawful purpose—prostitution—would be located in the instrumentality he used to transport a minor for that purpose." Although the district court did not make a determination as to whether it was "reasonable" for officers to believe Hornbeak's car contained evidence of his offense of arrest, the court's observations at the pretrial conference support that conclusion. The court stated that the officers "thought [the car] was a likely location for evidence of prostitution because they had just busted a call" and "had a pretty good reason to believe that there might be evidence in that car" such as "a call book, receipts, and things like that." Yet the court failed to apply *Gant.*[1]

## CONCLUSION

For the reasons given above, this court VACATES the district court's March 21, 2011 order granting the motion to suppress evidence obtained from the

---

[1] Because the search was permissible according to *Gant*, we need not consider the proffered alternate justification that it was an inventory search.

government's wiretaps and the December 2006 search of Hornbeak's phone and vehicle.  We REMAND for further proceedings consistent herewith.