# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2023

Lyle W. Cayce
Clerk

_____

No. 22-20107

_____

Ramey & Schwaller, L.L.P.,

*Plaintiff—Appellant*,

*versus*

Zions Bancorporation NA, *doing business as* Amegy Bank,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-2890

_____

Before Smith, Clement, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

As the COVID-19 pandemic ground economic activity across the country to a near standstill in March 2020, Congress enacted the Paycheck Protection Program (PPP) to help small businesses keep workers employed during the crisis. *See* Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136 § 1102, 134 Stat. 281, 286 (2020) (codified as amended at 15 U.S.C. § 636(a)(36)). PPP loans were made by participating private lenders but guaranteed by the federal government. *Id.* And PPP loans were fully forgivable if borrowers used the funds for certain enumerated purposes. *See* 15 U.S.C. § 636m.

No. 22-20107

Congress assigned implementation of the PPP to the Small Business Administration (SBA).  SBA issued regulations outlining eligibility criteria. Among other things, potential borrowers must have answered "No" to whether "any individual owning 20% or more of the equity of the Applicant [was] subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole."

When completing a PPP loan application on behalf of law firm Ramey & Schwaller, L.L.P., owner William Ramey answered "No" to that question. Based in part on that representation, Zions Bancorporation, NA, doing business as Amegy Bank, approved the law firm's application and disbursed a $249,300 loan.  Later, the bank learned that Ramey had actually been subject to a criminal complaint accusing him of attempted sexual assault in Harris County, Texas.  So the bank held the law firm in default and froze the firm's accounts as an offset to the loan balance.

The law firm then filed this action against the bank. *Inter alia*, the firm sought a declaratory judgment that Ramey did not answer the application question falsely.  The bank alleged a counterclaim for breach of contract.  The district court granted summary judgment to the bank and dismissed the law firm's claims.  We affirm.

## I.

Ramey owned 100% of Ramey & Schwaller, a Houston law firm.  On September 25, 2019, a criminal complaint was filed against him in state court in Harris County, Texas, accusing him of attempted sexual assault of a female employee.  Finding probable cause, a Harris County magistrate judge issued a warrant for Ramey's arrest on September 26.  He was arrested the next day.

After arrest, Ramey made his first appearance in court.  A state magistrate judge upheld the probable cause finding and ordered that Ramey

2

No. 22-20107

remain in custody until he posted bail. The magistrate judge also informed Ramey that he stood accused of attempted sexual assault (a third-degree felony) and read him his rights. She set his bail at $20,000. Ramey posted bail and was released. Though his arraignment was initially scheduled for November 19, 2019, it was rescheduled several times, both at the request of Ramey's counsel and due to COVID-19 restrictions. Eventually, in October 2021, a grand jury failed to return a bill of indictment against Ramey.

In April 2020, while the complaint against Ramey remained pending, Ramey & Schwaller applied for a $249,300 PPP loan from Amegy Bank. Ramey completed the SBA's PPP Borrower Application Form (the Application) on the law firm's behalf. In conformance with the eligibility criteria for PPP loans, Question 5 on the Application asked:

> Is the Applicant (if an individual) or any individual owning 20% or more of the equity of the Applicant subject to an indictment, criminal information, arraignment, or other means by which formal criminal charges are brought in any jurisdiction, or presently incarcerated, or on probation or parole?

If an applicant answered "Yes," it was ineligible to receive a PPP loan under SBA regulations. *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20812 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 120).[1] In response to Question 5, Ramey checked the box for "No." He then signed the Application, certifying that the law firm was "eligible to receive a loan under the rules in effect at the time th[e]

---

[1] On appeal, the parties point to sundry other provisions in later SBA PPP regulations and guidance documents to support their arguments. However, none of those are relevant because they were adopted after the law firm submitted the Application on April 16, 2020. Whether the firm answered Question 5 falsely depends only on the regulations in place at the time it completed the Application.

application [was] submitted" and that "the information provided in th[e] application . . . [was] true and accurate in all material respects."

After approval of the Application, Ramey, on behalf of the law firm, executed two bank-created forms to finalize the firm's PPP loan: a Business Loan Agreement (the Agreement), and a Promissory Note (the Note). The Agreement states that the loan was only issued in "rel[iance] upon Borrower's representations, warranties, and agreements as set forth in this Agreement and any Related Documents[.]" It specifically references "Paycheck Protection Program Application forms" as Related Documents. And it lists "Event[s] of Default," including if "[a]ny warranty, representation, or statement made or furnished to the Lender by Borrower or on Borrower's behalf under th[e] Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished[.]" In case of default, the bank was allowed to declare "all Indebtedness immediately . . . due and payable" and "setoff all sums owing on the Indebtedness against any and all" of the borrower's accounts held by the bank.

After Ramey signed the Agreement and the Note, the bank disbursed $249,300 in PPP loan proceeds to the law firm. The firm spent the funds and began pursuing loan forgiveness. *See* 15 U.S.C. § 636(m).

In the meantime, Ramey had also applied for both personal and business lines of credit from the bank. Reviewing those applications, the bank ran a criminal background check on Ramey, which revealed the Harris County proceedings against him. Based on that disclosure, the bank notified the law firm in July 2020 that it "believe[d] an event of default ha[d] occurred" under the Agreement for the firm's PPP loan because the firm had made a "false statement in the loan application" when answering Question

No. 22-20107

5. The bank declared the loan immediately due and exercised its right of setoff by freezing $249,300 held in the law firm's bank accounts.

The bank's actions caused ripple effects. For one, when the law firm applied for another PPP loan from Chase Bank, Chase denied the loan because of a "PPP loan issue with other lender." For another, in April 2021, SBA denied the law firm's request for loan forgiveness on the grounds that "the borrower was ineligible based on William Ramey[']s false response to question number 5 on the loan application." The SBA further explained that "[t]he response was false because William Ramey was subject to formal criminal charges at the time the application was made."

## II.

The law firm sued the bank in Texas state court. The bank removed the case to federal court based on diversity jurisdiction. In its operative complaint,[2] the law firm sought a declaratory judgment that its PPP loan was not in default, as well as damages from the bank for breach of fiduciary duties, conversion, estoppel and quasi-estoppel, money had and received, breach of contract, and tortious interference with contract. The bank filed a counterclaim, alleging that the law firm breached the loan documents.

The law firm filed a motion for partial summary judgment on its declaratory judgment claim. It asked the district court to hold that the firm "correctly answered Question No. 5 of the SBA's Borrower Application Form and [was] therefore not in default of the PPP loan[.]" The district court denied the firm's motion.

_____

[2] The law firm's operative complaint is the fourth one it filed. But it was mislabeled as the "Second Amended Complaint." The firm's first "Second Amended Complaint" was filed October 2, 2020. Its second "Second Amended Complaint"—the live pleading here—was filed April 2, 2021.

No. 22-20107

The bank then filed its own motion for summary judgment. The bank contended that it was entitled to judgment on the law firm's claims because the answer to Question 5 was false as "Mr. Ramey was, at the very least, subject to means by which formal criminal charges are brought at the time he submitted the Loan Application[.]"[3]

The district court granted the bank's motion. The court concluded that the law firm's answer to Question 5 was false because "William Ramey was 'subject to [a] criminal information' at the time of the PPP loan application[.]" The court therefore held that the law firm's claims against the bank failed. It further granted summary judgment in favor of the bank on the bank's counterclaim and awarded the bank damages and attorney's fees. The district court then entered final judgment.

The law firm moved for reconsideration. The district court denied that motion. Without vacating its prior determination, the district court concluded that Ramey was subject to "other means by which formal criminal charges are brought," a "catch-all phrase" in Question 5 that required "complete candor from the Applicant."

The law firm timely appealed the district court's judgment and the denial of the firm's motion for reconsideration.

---

[3] The bank lodged two alternative arguments in its motion. First, the bank asserted that Ramey also answered Question 5 falsely because he was subject to an arraignment, which had been scheduled by the state court at the time he completed the Application. Second, the bank contended that the law firm had defaulted by failing "affirmatively [to] inform [the bank] of 'all existing or *threatened*' litigation, claims, and investigations which could materially affect [the law firm]'s financial condition," as required by the Agreement. Because the bank did not brief the first argument on appeal, it is forfeited. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). And because the latter is relegated to a footnote in the bank's appellate brief, it is likewise forfeited for insufficient briefing. *See Arbuckle Mtn. Ranch of Tex., Inc. v. Chesapeake Energy Corp.*, 810 F.3d 335, 339 n.4 (5th Cir. 2016).

No. 22-20107

## III.

This court reviews a summary judgment *de novo*, applying the same legal standards as the district court. *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 255 (5th Cir. 2020). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 315 (5th Cir. 2020) (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). While "[w]e construe all facts and inferences in the light most favorable to the nonmov[ant]," *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005), "unsupported allegations or . . . testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment," *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997).

## IV.

This case hinges on whether Ramey answered the Application's Question 5 falsely. If he did, then Ramey & Schwaller defaulted on its loan, the law firm's claims against Amegy Bank fail, and the bank's counterclaim succeeds.

In granting the bank's summary judgment motion, the district court concluded that Ramey answered Question 5 falsely because he was subject to a "criminal information" when he completed the Application. Specifically, the district court determined that the criminal complaint filed against Ramey constituted an "information" under Texas law, thus bringing it within the purview of Question 5.

7

No. 22-20107

On reconsideration, the district court did not retreat from its earlier reasoning[4] but articulated a different rationale in denying the law firm's motion: It concluded that Ramey's answer to Question 5 was false because at the time Ramey completed the Application, he was subject to "other means by which formal criminal charges are brought," which the court construed as Question 5's "catch-all phrase designed to elicit complete candor" from PPP applicants. The district court thus reasoned that the law firm had "forfeited [its] rights" to the PPP loan it received by "fail[ing] to act with complete candor" in answering Question 5.

On appeal, the law firm contends that the district court erred both in granting summary judgment and on reconsideration. As to the initial ruling, the law firm submits that the district court misconstrued Texas law in concluding that the complaint against Ramey was equivalent to a criminal information. As to reconsideration, the law firm urges that the district court erred in its determination that Ramey was subject to "other means by which formal criminal charges are brought" because Question 5's phrasing is less capacious than the district court held it to be.

We need not address the district court's initial basis for granting the bank summary judgment—i.e., that Ramey was subject to a criminal information at the time the law firm applied for its PPP loan—because we conclude that, at the least, Ramey was subject to "other means by which formal criminal charges are brought" when he completed the Application. *See Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 430 (5th Cir. 2022) ("We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court."

---

[4] The district judge who originally considered this case retired, so the motion for reconsideration was decided by a different district judge.

(quotations and citation omitted)). Ramey answered Question 5 falsely either way. Plain meaning, the use of the word "charge" in the state court records from Ramey's case, and Texas law all support our conclusion that Ramey's state court proceeding falls within Question 5's sweep.

First, plain meaning. Considering whether a contract has been breached under Texas law, we must give "terms their ordinary and generally accepted meaning unless the contract directs otherwise." *Great Am. Ins. Co. v. Primo*, 512 S.W.3d 890, 893 (Tex. 2017). In pertinent part, Question 5 asks whether "any individual owning 20% or more of the equity of the Applicant [was] subject to . . . means by which formal criminal charges are brought." The term "charge" is not defined in the Application, the Note, or the Agreement. But Black's Law Dictionary defines "charge" as a "formal accusation of an offense as a preliminary step to prosecution." *Charge*, Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ (11th ed. 2019). When he completed the Application, Ramey was subject to a formal accusation of attempted sexual assault and preliminary steps were being taken in state court toward prosecuting him. A criminal complaint had been filed against Ramey; a state magistrate judge had found probable cause and issued an arrest warrant; Ramey had been arrested and was released on bail; and his arraignment was scheduled. Therefore, based on the plain meaning of the word "charge," Ramey was subject to "means by which formal criminal charges are brought" when he completed the Application.

The records from Ramey's criminal case confirm this. The criminal complaint against him listed attempted sexual assault as his "felony charge." The state court's docket referred to the complaint as a "charging instrument." Moreover, the arrest warrant described the allegations in the complaint and then ordered a peace officer "to arrest the defendant and bring him before the court . . . to answer the above charge." And the bail bond, which Ramey signed, listed "att sexual assault" as Ramey's "charge" and

stated that the "condition of this bond is that the defendant has been charge[d] with a felony offense[.]"  The bond also required that Ramey appear "for any an[d] all subsequent proceedings that may be had relative to said charge in the course of criminal actions based on said charge[.]"

Texas law likewise validates our reading of Question 5 as encompassing Ramey's state proceeding.  The law firm and the bank agree that the complaint in Ramey's case was brought under Article 15.04 of the Texas Criminal Code.  That statute states that an "affidavit made before the magistrate or district or county attorney is called a 'complaint' if it *charges* the commission of an offense."  TEXAS CODE OF CRIM. P. art. 15.04 (emphasis added).

The law firm's arguments otherwise are unavailing.  First, the firm contends that SBA's "regulatory history" shows that "the 'other means' language was not intended to expand the scope of the exclusion to non-indictments, but to make sure that outlier states who call those documents something else were captured."  Specifically, the law firm points to "a pre-PPP form for SBA loans" from 2013 that "says the reference to an 'information' in the criminal exclusion is meant to be 'a document that is filed in court identifying charges against a defendant' that is 'commonly used in lieu of an indictment if the subject is intending to plead guilty.'"  But an SBA form from seven years prior explaining the inclusion of "information" in that document's criminal exclusion is not relevant to the meaning of "charge" in the Application for PPP loans, much less sufficiently probative to override the plain language of the Application.

Second, the law firm contends that the canon of *ejusdem generis* counsels in its favor.  That canon of construction holds that "[w]here general words follow an enumeration of two or more things, they apply only to . . . things of the same general kind or class specifically mentioned."

No. 22-20107

Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 199 (2012). Based on this canon, the law firm argues that "other means by which formal criminal charges are brought would have to be like an indictment[.]" Therefore, the firm suggests, because "Ramey [was] not 'under an indictment,' Ramey [was] not 'under other means.'"

Not so. *Ejusdem generis* only applies where "the initial terms all belong to an obvious and readily identifiable genus[.]" *Id.* The law firm contends that the specific terms enumerated in Question 5 all belong to the genus of instruments that are "like an indictment," but the firm does not explain what that means. In any event, the firm's proposed genus is not at all "obvious and readily identifiable." The canon of *ejusdem generis* therefore is not persuasive for the law firm's position.

## V.

Because Ramey was, at least, subject to "means by which formal criminal charges are brought" at the time he completed the Application, he answered Question 5 falsely on behalf of Ramey & Schwaller. Accordingly, the law firm was in default under the PPP loan documents, and the district court correctly entered summary judgment in favor of Amegy Bank.

AFFIRMED.