IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 10, 2008

Charles R. Fulbruge III
Clerk

No. 07-51258

ALTA GARRETT

Plaintiff-Appellant

v.

JUDSON INDEPENDENT SCHOOL DISTRICT

Defendant-Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:06-CV-174

Before DAVIS, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Alta Garrett appeals the district court's grant of the Judson Independent School District's ("the School District") motion for summary judgment, dismissing her federal and state law claims arising out from the School District's decision not to renew Garrett's teaching contract when it expired at the end of the 2004-2005 school year.  We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTUAL AND PROCEDURAL HISTORY

Alta Garrett is a former school teacher, who worked for the School District from 1991 until May 2005. In 2001, Vera Ruffin was hired as a new principal at the school where Garrett taught. Garrett was aware of the School District's employment, employee grievance, and teacher evaluation policies when she was hired and throughout the duration of her employment with the School District. Indeed, Garrett utilized the School District's grievance procedures at least twice during her employment to challenge performance appraisals, in May 2003 and June 2004. On May 16, 2003, Garrett initiated the grievance process for the first time when she complained about receiving a "below expectations" rating on a performance appraisal. Garrett filed another grievance on June 10, 2004, regarding another negative appraisal rating. Garrett admitted during her deposition in this matter that neither of these grievances were related to the claims that are the basis of her lawsuit.

During the 2004-2005 school year, the School District received more than forty parent complaints, and numerous student complaints, regarding Garrett's lack of communication, treatment of students, and her negative influence on student learning. More than twenty parents requested that their children be removed from Garrett's classroom. In addition to these complaints, the School District had demonstrated concerns about Garrett's judgment, failure to follow directives, and lack of student progress. School District staff notified Garrett of these concerns, counseled her for specific incidents and requested improvements in performance. Garrett received documentation of these meetings. The School District found such disciplinary actions unsuccessful and notified Garrett on March 11, 2005, of the administration's decision to recommend the non-renewal of her 2004-2005 teaching term contract.

Two weeks later the School District's Board of Trustees voted to accept that recommendation and authorized the School District's administration to provide written notice to Garret of its decision, which Garret received on March 31, 2005. That correspondence notified Garrett of the reasons her term employment contract was proposed for non-renewal. Specifically, such reasons included: (1) deficiencies pointed out in observation reports, appraisals or evaluations, supplemental memoranda, or other communications; (2) failure to fulfill duties or responsibilities; (3) insubordination; (4) failure to comply with Board policies or administrative regulations; (5) failure to meet standards of professional conduct; (6) a significant lack of student progress attributable to the educator; and (7) attempts to encourage or coerce a child to withhold information from the child's parent or from other School District personnel. During the twenty-day period between when Garrett received the March 11, 2005 notice and the March 31, 2005 notice, she did not use the grievance procedure to challenge the School District's proposed recommendation not to renew her contract.

On May 24, 2005, the School District's Board of Trustees formally adopted the decision not to renew Garrett's teaching contract and subsequently provided Garrett with notice of its decision.[1] On May 25, 2005, the day after the School District's Board of Trustees formally adopted the decision not to renew Garrett's teaching contract, the School District received a resignation letter from Garrett. Garrett's resignation letter references "the injustices that have occurred to me and other teachers at the hands of Principal, Verna Ruffin," asserting that there was a pattern of retaliation against employees who opposed Ruffin. The letter

---

[1] Although Garrett asserts that she initiated administrative grievance procedures regarding her employment non-renewal, her sworn testimony specifically and repeatedly contradicts this assertion.

makes no mention of any claim that her alleged unjust employment treatment was on account of race, sex, or age discrimination or in retaliation. Although dated the day before, May 24, 2005, there is no evidence that the School District was aware of the letter until it was received on May 25, 2005.

On April 13, 2005, while Garrett was still employed by the School District, she initiated a charge of discrimination with the Texas Workforce Commission Civil Rights Division ("TWC CRD"); she finalized her complaint in September 2005.[2] Garrett did not complain or otherwise tell anyone at the School District prior to the final decision not to renew her contract that she had filed a charge of discrimination or that she believed that the non-renewal decision was based on her race, sex, age, or because of retaliation. The School District was unaware that she had filed a charge of discrimination until five months after that decision, when it received notification from the TWC CRD on September 9, 2005. the School District received Garrett's EEOC charge three days later.

Although Garrett was familiar with the School District's grievance process, she did not initiate the grievance process regarding any of the claims in her discrimination charge against the School District. In November 2005, the TWC CRD recommended dismissal of Garrett's charge and mailed to her a Dismissal and Notice of Right to File a Civil Action. The EEOC adopted the TWC CRD findings and similarly mailed to Garrett a Dismissal and Notice of Rights Letter in December 2005.[3]

---

[2] Garrett's TWC CRD charge was filed concurrently with the Equal Employment Opportunity Commission ("EEOC") for dual filing purposes.

[3] TWC CRD recommended dismissal and closure of Garrett's charge, in part, for the following reasons:

The evidence does not support the allegations that the employer discriminated

In February 2006, Garrett sued the School District, Ruffin, and Williams (collectively "Defendants") in their official capacity, asserting unlawful employment discrimination, retaliation, and various state law tort claims. In April 2006, the district court granted Defendants' Rule 12(b)(1) motion to dismiss Garrett's state tort claims against Williams, Ruffin, and the School District on the basis of sovereign immunity, leaving the School District as the remaining defendant in the suit. At the close of discovery, Defendants filed a motion for summary judgment on Garrett's remaining claims. In May 2007, the magistrate judge issued a memorandum and recommendation that the court grant Defendants' motion. In September 2007, the district court accepted the factual findings and recommendation of the magistrate judge, entered a final order dismissing Garrett's claims under the Age Discrimination Employment Act ("ADEA") and the Texas Whistleblower Act ("TWA"), and entered summary judgment in favor of the School District on Garrett's claims under Chapter 21 of the Texas Labor Code, Title VII, and the Constitution after denying her request to amend her complaint. Garrett appeals this judgment.

## STANDARD OF REVIEW[4]

---

against [Garrett] based on Race/Black, Sex/Female, or in an act of Retaliation. Evidence reflects that [Garrett]'s non-renewal of contract was based on performance, conduct, and the highest number of student and parent complaints lodged against [Garrett]. Respondent's record reveals that [Garrett] was counseled and given directives for improvement which were not adhered to.

[4] We are not bound by the standard of review set out by the parties briefs if we find that standard incorrect. See Izzarelli v. Rexene Prod. Co., 24 F.3d 1506, 1519 n.24 (5th Cir. 1994). Although Appellant's brief asserts that the "clearly erroneous" standard applies to all of her claims because she "complains of factual determinations by the District Court," the rest of her briefing takes issue with the district court's application of the summary judgment standard and substantive law to the facts in the case.

The five issues on appeal are whether the district court erred in: (1) dismissing, for lack of jurisdiction, Garrett's TWA claim; (2) granting summary judgment against Garrett on her Texas labor law retaliation claim; (3) dismissing as time-barred Garrett's age discrimination claim; (4) granting summary judgment against Garrett on her Title VII race and gender discrimination claims; and (5) granting summary judgment on Garret's constitutional claims and denying her request to amend those claims.

Regarding dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, this court reviews questions of law de novo. Randel v. U.S. Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998). We review the district court's determinations of disputed fact for purposes of resolving jurisdiction under the "clearly erroneous" standard. Id.

The district court's grant of summary judgment is also reviewed de novo. Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007). A party is entitled to summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The opposing party must set forth specific and supported material facts and cannot defeat a properly supported summary judgment motion by resting on bare accusations or denials. FED. R. CIV. P. 56(e).

## DISCUSSION

Texas Law Claims

1. Texas Whistleblower Act Claim

Garrett argues that the district court erred in dismissing her TWA claim for lack of jurisdiction because (1) she pursued her administrative remedies by requesting a hearing before the Board's final determination not to renew her contract, and alternatively (2) there is an implicit futility exception to the requirement to pursue administrative remedies. The School District responds that there is no futility exception, and the district court correctly ruled that Garrett did not initiate grievance procedures as required by the TWA.

The TWA prohibits a governmental entity from terminating or taking any adverse employment action against an employee who, in good faith, reports to an appropriate law enforcement authority a violation of law by the entity or a public employee of the entity. TEX. GOV'T CODE § 554.002(a).[5] Although Garrett argues that Texas law does not in fact require that she have first gone through the grievance procedure, that argument is without merit. Under the statute, Garrett was required to pursue her administrative remedies before suing the School District. See TEX. GOV'T CODE § 554.006(a) ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local government entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.").

Failure to initiate administrative remedies is a jurisdictional bar to suit. See Medical Arts Hosp. v. Robinson, 216 S.W.3d 38, 40-41 (Tex. App. 2006) (noting disagreement among Texas appellate courts as to whether filing a grievance is jurisdictional or simply a bar to recovery, but finding the Texas

---

[5] To prevail under the Whistleblower Act, a plaintiff must show that (1) she was discriminated against for reporting a violation of law, and (2) a causal link exists between the reporting and the adverse employment action. Upton County, Tex. v. Brown, 960 S.W.2d 808, 823 (Tex. App. 1997).

legislature's 2005 amendment to § 311.034 clarified that a governmental entity's immunity from suit for a whistleblower claim is conditioned upon timely filing a grievance); Montgomery County Hosp. Dist. v. Smith, 181 S.W.3d 844, 853 (Tex. App. 2005) (similar); see also Breaux v. City of Garland, 205 F.3d 150, 162-63 (5th Cir. 2000) (holding that the exhaustion requirement of the TWA is jurisdictional). The purpose of the requirement that an employee initiate grievance procedures before filing suit is to afford the employer an opportunity to correct its errors by resolving disputes before litigation. See Colorado City v. Ponko, 216 S.W.3d 924, 928 (Tex. App. 2007).

The district court's finding that Garrett did not pursue administrative remedies for her TWA claim because she did not initiate the School District's grievance procedure for the non-renewal of her contract, is supported by the record and not clearly erroneous. Although Garrett has used the School District's grievance procedures at least twice in the past during her employment, she chose not to do so on this occasion. As the district court noted, Garrett testified in deposition that she did not request or want a hearing regarding the Board's non-renewal decision, and that she did not initiate or otherwise participate in a grievance procedure to pursue her TWA claim, instead going directly to the TWC CRD and EEOC. She further testified that she did not authorize anyone to initiate the grievance procedures on her behalf, including her then-attorney. Further, a teacher aggrieved by a decision of the Board not to renew the teacher's term employment contract is entitled to appeal to the Commissioner for a review of that decision; Garrett did not make such an appeal. See TEX. EDUC. CODE § 21.209.

Garrett urges that the TWA, because it is remedial in nature, must be liberally construed, in this case to include a futility requirement applicable to Garrett's failure to initiate the grievance process regarding the non-renewal of her contract. However, we will not construe the statute to eliminate the plain requirement of the text. See Montgomery County Hosp. Dist. v. Smith, 181 S.W.3d 844, 853-54 (Tex. App. 2005) (declining to adopt a futility exception, finding that under the circumstances it would "graft terms onto the Whistleblower Act that were not chosen by the Legislature"); Breaux, 205 F.3d at 162-63 (declining to create a futility exception to statutory, jurisdictional exhaustion requirement of the TWA).

Because Garrett did not pursue her administrative remedies for the Board's employment decision, the district court correctly dismissed her TWA claim for lack of jurisdiction.

## 2. Chapter 21 Retaliation Claim

Garrett argues that the evidence shows that she engaged in a protected activity, and therefore there is a fact issue regarding causation that precludes summary judgment on her Texas law retaliation claim. The School District responds that there is no evidence of the necessary but-for causal link, and therefore Garrett fails to establish even a prima facie case of retaliation.

To prove a case of retaliation under Chapter 21 of the Texas Labor Code, Garrett must first establish a prima facie case showing that (1) she engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. Herbert v. City of Forest Hill, 189 S.W.3d 369, 376-77 (Tex. App. 2006) (internal citations omitted). For purposes of a Chapter

21 retaliation claim, "protected activity" refers specifically to (1) opposing a discriminatory practice, (2) making or filing a charge, (3) filing a complaint, or (4) testifying, assisting or participating in any manner in an investigation, proceeding, or hearing. Id. at 376-77; TEX. LABOR CODE § 21.055. Engaging in a protected activity requires complaining of the sort of discrimination that is covered by the Texas Commission on Human Rights Act ("TCHR Act"), and a vague charge of mistreatment does not invoke protection under that statute.

Garrett must establish that, without her protected activity, the School District would not have made the non-renewal employment decision when it did. McMillon v. Texas Dep't of Ins., 963 S.W.2d 935, 940 (Tex. App. 1998). While she does not need to show that her protected activity was the sole cause of the adverse employment decision, she must establish that "but for" her protected activity, the employer would not have taken the prohibited actions. See Herbert, 189 S.W.3d at 376-77. She has not done this. In order for an employer to retaliate against an employee for engaging in a protected activity, the employer must actually know that the employee engaged in the protected activity. See Medina, 238 F.3d at 684; Marsaglia v. Univ. of Tex., El Paso, 22 S.W.3d 1, 5 (Tex. App. 1999) (holding that appellant did not show a causal connection because no evidence existed that the employer knew about the appellant's protected activity).

The evidence in the record establishes that the School District was unaware of Garrett's protected activity - filing a charge with the TWC CRD - until after the ultimate decision on her employment was made. The Board of Trustees voted in late May 2005 to confirm the decision not to renew her teaching contract after the 2004-2005 school year, but it did not receive notice

of Garrett's TWC CRD charge until September 2005. Garrett testified that she did not tell anyone at the School District that she had filed a discrimination charge, and there is no evidence supporting her argument that the School District was nonetheless aware of her protected activity prior to September 2005.[6] Garrett has not raised facts showing the required causal link of her Chapter 21 retaliation claim. Therefore she did not establish a prima facie case of retaliation, and the School District was entitled to summary judgment.

## ADEA Claim

Garrett argues that her ADEA claim is not time-barred because she exhausted administrative remedies as required; specifically, by checking the "other" box on her TWC/EEOC form, and stating her age on the form, she claims that she asserted a charge of age discrimination. The School District counters that this argument is without merit, and Garrett's ADEA claim is time-barred because she did not file a timely administrative charge of age discrimination with the EEOC before filing her lawsuit.

A plaintiff suing for age discrimination must file a timely administrative charge with the EEOC as a precondition to filing her lawsuit. 29 U.S.C. § 626(d) ("No civil action may be commenced . . . until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]. Such a charge shall be filed . . . within 180 days after the alleged unlawful practice occurred . . ."). In Texas, the charge must be filed within 300 days after the alleged unlawful

---

[6] Garrett's resignation letter, although dated May 24, 2005, did not put the School District on notice of her protected activity - initiating a charge with the EEOC - because it was received May 25, 2005, the day after the Board of Trustees' formally adopted its employment decision. Further, it contained no reference to any complaint of discrimination based on race, sex, age, or any other form of discrimination covered by the TCHR Act.

practice occurred.  See 29 U.S.C. § 626(d)(2) (referencing limitation of federal civil actions upon commencement of state proceedings provided by § 633); Tyler v. Union Oil Co. of Cal., 304 F.3d 379 (5th Cir. 2002) (explaining that as a "deferral" state, the limitations period for filing an age discrimination charge with the EEOC in Texas is effectively 300 days).  Thus, subject to certain equitable exceptions not at issue here, a Texas employee's ADEA claims are time-barred if the employee fails to file an age discrimination charge with the EEOC within 300 days from the date of the alleged unlawful employment practice.  See Tyler, 304 F.3d at 390-91.

From the record, it is clear that Garrett did not exhaust her administrative remedies as required.  Age discrimination is a "separate and distinct" claim of employment discrimination, which requires a specific administrative charge to have been filed with the EEOC.  See Randel, 157 F.3d at 395.  Garrett's initial complaint to the TWC CRD in April 2005 and the finalized complaint in September 2005 alleged only race, sex, retaliation and other (TCHR Act)[7] as the basis for the School District's non-renewal decision, and Garrett never amended her EEOC charge to add a claim for age discrimination.  Garrett's age claim was not within the scope of her EEOC charge of discrimination.  Her argument that having checked the "other" box, and not the specific "age" box, on the EEOC form

---

[7] Garrett indicated on her EEOC charge that checking the box for "other" discrimination indicated she suffered discrimination under the "TCHR Act".  The TCHR Act prohibits discrimination based on age as well as race, color, disability, religion, sex, and national origin. See Tex. Labor Code Ann. § 21.051. Because there is no evidence that the EEOC investigated age discrimination while investigating Garrett's charge, it is unreasonable to construe a charge of "other" discrimination as a charge of "age" discrimination where the charge form specifically included a box for Garrett to indicate that she was discriminated against based on "age".  See Thomas v. Tex. Dep't of Crim. Justice, 220 F.3d 389, 395 (5th Cir. 2000) ("[T]he scope of a Title VII complaint is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

alleged a charge of age discrimination is disingenuous, particularly because she makes no argument that age was a basis for any of the discriminatory activity she alleges in the written statement accompanying the form. Garrett's argument that the fact that her age is stated on the form, as a matter of routine detail such as name and address, constitutes a claim of age discrimination is meritless. Such an assertion would imply that every individual over age 40 filing a charge with the EEOC is bringing an ADEA claim in addition to whatever charge they intend to bring.

The district court correctly found Garrett did not file an EEOC age discrimination charge, failed to exhaust her administrative remedies, and therefore the court lacked jurisdiction over this claim. See Tyler, 304 F.3d at 390-91. Because Garrett did not file an EEOC age discrimination charge, and is now time-barred by the statute of limitations for doing so, her ADEA claim was also properly dismissed.

## Title VII Claims

Garrett argues that there is an issue of fact as to whether the School District's offered explanation of her employment treatment was a pretext for racial discrimination, precluding summary judgment on her Title VII employment discrimination claim.[8] The School District responds that Garrett

---

[8] In her brief under "Title VII Claims," Garrett also references age and sex discrimination. We address her claim of age employment discrimination supra. Further, Garrett's brief does not put forward any argument that the School District discriminated against her based on her sex, and in fact states that she was replaced by a woman; as such, that issue is waived, and summary judgment on that claim is affirmed.

has not raised a fact question regarding the School District's legitimate, non-discriminatory reasons for not renewing her teaching contract.

Where, as here, the plaintiff alleging employment discrimination does not produce any direct evidence of discrimination, the McDonnell Douglas burden-shifting framework applies. Garrett must first demonstrate a prima facie case of discrimination; the School District then must articulate a legitimate, non-discriminatory reason for its decision not to renew her contract; and if the School District meets this burden of production, Garrett must put forward sufficient evidence to create a genuine issue of material fact that either (1) the School District's reason is pretext, or (2) even if the School District's reason is true, it is only one reason for not renewing the contract, and Garrett's race is another motivating factor for the School District's conduct. See Burrell, 482 F.3d at 411-12; Rachild v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Garrett established a prima facie case of employment discrimination under Title VII:[9] (1) she is black, and therefore a member of a protected class; (2) she was qualified for the teaching position; (3) she suffered an adverse employment action, the non renewal of her teaching contract; and (4) that a similarly situated white employee was hired to fill the position. See Burrell, 482 F.3d at 412. The School District then met its burden of producing evidence of a legitimate, non-discriminatory reason for its decision not to renew Garrett's contract: her poor performance evaluations, disciplinary actions, and numerous parent and student complaints.

---

[9] The School District argues for the first time on appeal that Garrett did not establish a prima facie case under Title VII. Bcause this argument was not raised before the district court, we will not address it here.

Garrett's case depends on the contention that the School District's proffered nondiscriminatory justification for not renewing of her teaching contract was merely a pretext. See Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 403 (5th Cir. 2001). To carry her burden of persuading the trier of fact that the School District intentionally discriminated against her, Garrett is required to produce "substantial evidence" of pretext on the part of the School District. Auguster, 249 F.3d at 402-03 (noting that if a Title VII plaintiff can show that the defendant's proffered justification is mere pretext, that showing, coupled with the prima facie case, will be sufficient in most cases to survive summary judgement). Her subjective belief that she has been discriminated against, without more, cannot defeat summary judgment. See Auguster, 249 F.3d at 403. Garrett has not presented evidence creating a fact issue that the School District's offered legitimate, nondiscriminatory reasons that its non-renewal of her contract was a pretext for racial discrimination.

Reviewing the record, we find that the district court properly entered summary judgment for the School District. The record supports the School District's explanation that it decided not to renew Garrett's teaching contract based solely on her inadequate performance. During the 2004-2005 school year, the School District received over forty parent complaints and numerous student complaints about Garrett's teaching performance, including twenty parent requests to transfer their children out of Garrett's classroom. Garrett was counseled on several occasions regarding the School District's concerns about her performance without sufficient progress and improvement resulting. Garrett has provided no evidence to identify how her race influenced the School District's

employment decision or attacking the School District's explanation of its employment decision.

Constitutional Claims

Garrett argues that under the liberal pleading standards of the federal courts, her complaint can be read to include claims that the School District violated her First Amendment and Due Process Clause rights, and that summary judgment on such claims is not warranted. In the alternative, she argues that she should be allowed to amend her complaint. The School District asserts that such claims were not before the district court because Garrett's complaint does not reference 42 U.S.C. § 1983, and it is insufficient to put the School District on notice of any claims of Constitutional deprivation. The School District further argues that Garrett cannot produce evidence to establish the elements of either claim.

Pleadings must be construed "to do justice," and we do not require technical forms of pleading or motions. FED. R. CIV. P. 8(d)(1), (f). Under Rule 8, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based. TIG Ins. Co. v. Aon Re, Inc., 521 F.3d 351, 357 (5th Cir. 2008) (quoting Wellborn v. Sears, Roebuck & Co., 970 F.2d 1420, 1425 (5th Cir. 1992)).

Garrett does articulate an allegation that adverse employment actions were taken against her because of an exercise of First Amendment freedoms. Garrett contends that she complained to Ruffin, stating her belief that placing different special needs students (resource students and co-teach students) in the same classes within the Content Mastery Center (CMC) program violated the

federal law requirements to continue receiving funding, and that after this complaint she faced a "campaign of unfounded charges of incompetence" beginning in February 2004.

Although she does not delineate her First Amendment retaliation claim as a distinct "count" in her complaint, neither did she delineate her age claim, which was listed in the same paragraph as the other Title VII claims and which the district court recognized as an cognizable ADEA claim. Similarly, the same paragraph of the complaint discusses with sufficient particularity Garrett's allegation that she received adverse employment treatment as a result of orally communicating to Ruffin her belief that the school was operating in violation of federal law in running its CMC program. The fact that she did not specify that her claim was brought under § 1983, much as she had not specified that her age claim was appropriately brought under the ADEA, is of no moment.

Having determined that Garrett's complaint did sufficiently allege a claim for recovery under § 1983, we turn to whether summary judgment would be appropriate on that claim. Even though Garrett complied with the minimal pleading requirements of Rule 8(a), summary judgment is nevertheless proper because she has not produced evidence of a genuine issue of material fact. See FED. R. CIV. P. 56. To prove a First Amendment retaliation claim under 42 U.S.C. § 1983, Garrett must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on such matters outweighed the government employer's interest in promoting efficiency; and (4) her speech motivated the adverse employment action. Alexander v. Eeds, 392 F.3d 138, 142 (5th Cir. 2004). If that test is passed, the burden shifts to the School District to show that it would have come

to the same conclusion in the absence of the protected conduct. Id. (quoting Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001)).

Reviewing the record , no material issue of fact remains on this claim, and there is no evidence supporting Garrett's assertion that it was protected First Amendment activity that caused her employment problems at the School District. Specifically, Garrett has not raised an issue of fact that her comments to Ruffin and subsequent memo to other faculty members in 2001 regarding the AME/CMC educational program caused her to receive poor performance appraisals in the following years and/or ultimately the non-renewal of her teaching contract four years later. Judson is entitled to summary judgment on this claim.[10]

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[10] The district court correctly held that Garrett's pleadings do not establish a claim for deprivation of Due Process. See Moulton v. City of Beaumont, 991 F.2d 227, 230 (5th Cir. 1993) (substantive due process); Rathjen v. Litchfield, 878 F.2d 836, 838 (5th Cir. 1989) (procedural due process). Further, we find no abuse of discretion in the district court's denial of Garrett's request to amend her pleading to include Due Process or other additional allegations. See Whitmire v. Victus Ltd., 212 F.3d 885, 887 (5th Cir. 2000) (abuse of discretion is the standard for reviewing denial of request to amend pleadings). Such amendment would be extraordinarily prejudicial to Judson at this stage.