# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2024

Lyle W. Cayce
Clerk

No. 22-40580

RODNEY MAHAN, JOEL BARTON, JOHN RIGGINS,

*Plaintiffs—Cross-Appellees*,

JUSTIN SIKES,

*Plaintiff—Appellant*,

*versus*

DEPARTMENT OF PUBLIC SAFETY,

*Defendant—Appellee/Cross-Appellant*,

DIRECTOR STEVEN MCCRAW; CHAIRMAN STEVEN MACH,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:20-CV-119

No. 22-40580

Before RICHMAN, *Chief Judge*, STEWART, *Circuit Judge*, and SCHOLER, *District Judge*.[*]

PER CURIAM:[*]

This appeal arises from actions taken by Defendant-Appellee/Cross-Appellant Texas Department of Public Safety ("DPS") against five troopers in the Texas Highway Patrol division: Plaintiff-Appellant Justin Sikes, Plaintiffs-Cross-Appellees Rodney Mahan, Joel Barton, and John Riggins, and non-party John Henley.[1] The five troopers filed suit against DPS, asserting First Amendment and retaliation claims under 42 U.S.C. § 1983 and the Texas Whistleblower Act ("Act"), respectively. The district court dismissed Sikes's and Henley's claims on summary judgment as well as all claims raised under 42 U.S.C. § 1983. Only Mahan's, Barton's, and Riggins's (collectively, "Trial Plaintiffs") claims under the Act proceeded to trial. The jury found DPS liable, and the district court entered judgment for Trial Plaintiffs, subsequently amending the judgment to include equitable relief. Sikes and DPS each appealed. On appeal, Sikes challenges the district court's partial summary judgment dismissing his claims under the Act. On cross-appeal, DPS challenges the denial of DPS's Renewed Motion for Judgment as a Matter of Law and the Amended Final Judgment.

For the reasons stated herein, we AFFIRM the district court's grant of summary judgment as to Sikes's claims under the Act. After concluding we have jurisdiction to consider DPS's cross-appeal, we AFFIRM the district court's denial of DPS's Renewed Motion for Judgment as a Matter

---

[*] District Judge of the Northern District of Texas, sitting by designation.

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

[1] Although Henley filed a timely notice of appeal, his appeal was dismissed pursuant to his motion.

No. 22-40580

of Law, VACATE the entry of equitable relief in the Amended Final Judgment, and REMAND for further proceedings consistent with this opinion.

## I. Factual Background

On September 21, 2018, Riggins submitted a Chain-of-Command Review Request Form to Major Terry Truett. Per the DPS Manual, which contains DPS's policies, regulations, and procedures, a Chain-of-Command Review is one of the grievance procedures available to DPS troopers. In both the Chain-of-Command Review Request Form and during a follow-up meeting with Truett, Riggins alleged that his supervisor, Sergeant Robert Shugart, (1) enforced an unlawful quota system for arrests and traffic stops in violation of Texas law, (2) purchased awards for the troopers with the most traffic stops, and (3) created a hostile work environment at the Center, Texas, duty station. Riggins also forwarded his request to the Office of Inspector General ("OIG"), which began a division referral investigation and notified the Chief of the Texas Highway Patrol Division at the time, Ron Joy.

Truett assigned DPS Lieutenant Carl Currie to investigate the allegations against Shugart. Currie conducted multiple interviews and spoke with Mahan, Barton, Riggins, and Henley. Each trooper reported concerns with Shugart's conduct. At trial, Barton testified that after he met with Currie, Shugart called Barton into his office, accused Barton of "going rogue," and warned Barton that he was aware of the ongoing investigation.

Based on Currie's investigation report, Lieutenant James Brazil recommended that Shugart, Mahan, Henley, and Riggins attend mediation. Chief Dispute Resolution Officer Kevin Meade was to serve as the mediator.

Thereafter, DPS allegedly began retaliating. On January 15, 2019, Barton emailed Shugart and Brazil to express interest in applying for the Region 2 Crisis Negotiation Unit ("CNU") and request chain-of-command

3

approval in advance of the January 17, 2019, application deadline. Approximately three hours after Barton made the request, Shugart emailed Brazil recommending that Barton be considered for the position. Shugart did not respond directly to Barton with approval, and never having received chain-of-command approval, Barton did not submit his application for the Region 2 CNU.

On February 8, 2019, attorney Paul A. Robbins, representing Riggins, Mahan, Barton, and Henley, sent a letter to Meade explaining why the scheduled mediation process would be ineffective, notifying Meade that each trooper "suffered bullying, various forms of abuse, retaliation and intimidation directly from their Sgt. Robert Shugart," raising concerns about the DPS investigation into the allegations against Shugart, and informing Meade that if DPS did not resolve the issues, the troopers would "take further and public action to secure a satisfactory remedy." The mediation was postponed as a result of the letter.

OIG Lieutenant Riccardo Lopez was assigned to further investigate the allegations against Shugart in March 2019. Lopez's investigation lasted approximately twelve months and included over thirty witness interviews, including interviews with Sikes and Trial Plaintiffs. During his interview, Sikes discussed his experience with Shugart while working at the duty stations in Jasper and Center, his belief that Shugart created a hostile work environment, and Shugart's use of awards to create competition among the troopers. There is no evidence that he discussed the alleged retaliation that became the subject of his claims under the Act. On April 1, 2019, Barton met with Lopez. During the meeting, Barton specifically identified Shugart's failure to respond to Barton's promotion request as one of the "examples he believed to be retaliation by Sgt. Shugart for the Division Referral investigation."

No. 22-40580

Meanwhile, the alleged retaliation continued throughout the OIG investigation. In May 2019, Mahan and Riggins were transferred from their duty station in Nacogdoches, Texas, to a duty station in Houston County, Texas. Mahan and Riggins each reported to Lopez that they believed their transfers were retaliatory, and the OIG opened a second investigation to address their complaints of retaliation.

On September 10, 2019, Sikes requested a secondary school office in the Broaddus Independent School District. Sikes claims that his request was initially ignored as retaliation for speaking to Lopez and then denied after Sikes joined the instant lawsuit. Sikes further claims that in September and October 2019, DPS supervisors began stalking his aunt's house and his home in Lufkin, Texas.

After the conclusion of his investigation, Lopez submitted two internal reports: the first addressed Riggins's and Mahan's allegations of retaliation, and the second concerned Riggins's original three allegations against Shugart. On April 3, 2020, Texas Highway Patrol Chief Dwight Mathis informed Shugart of the investigation's outcome, which did not sustain the allegation that Shugart had instituted a traffic enforcement quota for arrests and traffic stops but did sustain the allegations that Shugart had purchased awards for the troopers with the most traffic stops and that Shugart created a hostile work environment at the Center duty station. Riggins, Mahan, Barton, and Henley received a summary of the investigation's outcome on May 6, 2020.

## II. Procedural History

On May 26, 2020, Riggins, Mahan, Barton, and Henley filed suit against DPS in the United States District Court for the Eastern District of Texas. They brought claims for violations of their First Amendment rights to free speech and to petition under 42 U.S.C. § 1983 and retaliation claims

5

under the Act. One month later, they filed the First Amended Complaint, adding Sikes as an additional plaintiff and Director Steven McCraw and Chairman Steven Mach as defendants in their official capacities.

On May 26, 2021, DPS, McCraw, and Mach jointly moved for summary judgment on all claims. The district court granted in part and denied in part the summary judgment motion. The district court dismissed all claims under Section 1983 as well as Henley's and Sikes's claims under the Act.[2] Relevant to this appeal, the district court determined that there was no evidence Sikes had initiated any grievance or appeal procedure under DPS policy and therefore had not satisfied the procedural prerequisite to filing suit. Sikes timely filed a notice of appeal.

The district court denied the Motion for Summary Judgment as to Trial Plaintiffs' claims under the Act, concluding that each trooper had complied with the Act's prerequisite to filing suit. These claims proceeded to trial on June 21, 2022.

Trial Plaintiffs rested on the fourth day of trial, and DPS moved for judgment as a matter of law on the grounds that Trial Plaintiffs did not initiate grievance procedures regarding the personnel actions that were challenged at trial. The district court denied DPS's motion. After DPS's case-in-chief, DPS renewed its motion for judgment as a matter of law, and the district court again denied DPS's motion.

On June 28, 2022, the jury found in favor of Trial Plaintiffs. Specifically, the jury found that Mahan's and Riggins's reports regarding Shugart were a cause of their transfers to Houston County in May 2019 and that the transfers were adverse personnel actions. The jury found that

---

[2] In doing so, the district court dismissed all claims against McCraw and Mach.

Barton's report was a cause of Shugart's inaction and/or delay with respect to Barton's promotion request and that this inaction and/or delay was an adverse personnel action. The jury awarded each Trial Plaintiff $500,000 in compensatory damages. On July 20, 2022, the district court entered its Final Judgment, which reduced the damages award to $250,000 per Trial Plaintiff based on the statutory damages cap and awarded costs to Trial Plaintiffs.

On August 4, 2022, Trial Plaintiffs filed their Motion to Amend the Court's Final Judgment to Include Equitable Relief. Meanwhile, DPS filed its Renewed Motion for Judgment as a Matter of Law, which the district court denied. On October 19, 2022, during a hearing on Trial Plaintiffs' motion, the district court stated it had mistakenly entered a final judgment based on the jury verdict and took the motion under advisement.

On December 1, 2022, the district court *sua sponte* entered its Amended Final Judgment that vacated the original Final Judgment and ordered certain equitable relief. Specifically, the Amended Final Judgment ordered DPS to (1) place in Trial Plaintiffs' personnel files a copy of the Amended Final Judgment and jury verdict, (2) remove Shugart's 2020 Manager Evaluation from Barton's and Mahan's personnel files and the online system, (3) deliver to each employee who testified during trial a copy of a letter attached to the order on DPS letterhead, (4) require the chain of command for the Highway Patrol Division Region 2 to verify they have read the Act, and (5) file a written certification of compliance with the district court's orders. The district court denied as moot Trial Plaintiffs' Motion to Amend the Court's Final Judgment to Include Equitable Relief.

On December 5, 2022, DPS filed an Emergency Motion to Stay Pending Appeal requesting that the district court stay the Amended Final Judgment. In the motion, DPS stated that it "intends to file a notice of appeal to the Fifth Circuit from" the Amended Final Judgment. The district court

granted the motion the following day, noting DPS's "intent to appeal the Court's Amended Final Judgment." On January 24, 2023, DPS filed its Motion for Extension of Time to File Formal Notice of Appeal, asking the district court to recognize that DPS's Emergency Motion to Stay Pending Appeal constituted a timely notice of appeal under Federal Rule of Appellate Procedure 3(c) and, alternatively, requesting an extension of time to file a formal notice of appeal. The district court granted the motion in part, finding that the emergency motion constituted a timely notice of appeal. The district court ordered DPS to refile its emergency motion as a notice of appeal and pay the required fees.

## III. DISCUSSION

There are four issues on appeal: first, whether the district court erred in granting summary judgment on Sikes's retaliation claim under the Texas Whistleblower Act; second, whether this court has jurisdiction over DPS's cross-appeal; third, whether the district court erred in denying DPS's motion for judgment as a matter of law; and fourth, whether the district court erred in entering its Amended Final Judgment to include equitable relief against DPS. We address each of these issues in turn.

### A. Summary Judgment on Sikes's Claim

We turn first to the grant of summary judgment as to Sikes's retaliation claim. We review *de novo* the district court's granting of a motion for summary judgment, applying the same standard as the district court. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155–56 (5th Cir. 2018) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). "Summary judgment is proper only when it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id*. at 156 (quoting *Reingold*, 126 F.3d at 646). "An issue of material fact is genuine if a reasonable jury could return a verdict for the

nonmovant." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (citation omitted). We "draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence." *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 474 (5th Cir. 2015) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002)).

Because Sikes's participation in the OIG investigation was wholly unrelated to his claim under the Act, we find that Sikes did not initiate action under DPS grievance procedures and therefore did not satisfy the Act's prerequisite to suit.

The Texas Whistleblower Act protects public employees from retaliation by a public employer when the employee "in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." Tex. Gov't Code Ann. § 554.002(a). Prior to filing suit, the Act requires employees to "initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to . . . adverse personnel action." *Id.* § 554.006(a). "[A]n employee with a Whistleblower Act claim must strictly abide by the procedural limitations set out in the Act to obtain relief." *City of Madisonville v. Sims*, 620 S.W.3d 375, 379 (Tex. 2020) (per curiam) (citation omitted).

As this court has explained, "[t]he purposes of the exhaustion requirement are to give the employer notice of a grievance and a chance to resolve it." *Breaux v. City of Garland*, 205 F.3d 150, 163 (5th Cir. 2000). Because the Act does not define what it means for an employee to "initiate" a grievance or appeal process, the "grievance or appeal procedures of the employing state or local governmental agency" govern. *See* Tex. Gov't Code Ann. § 554.006(a); *see also City of Waco v. Lopez*, 259 S.W.3d 147,

154 (Tex. 2008) ("[T]he Whistleblower Act . . . requir[es] the employee to bring a grievance under the procedures that are provided by the public employer." (citation omitted)).

While it is undisputed that Sikes participated in the grievance process initiated by management and the other troopers, Sikes failed to initiate a grievance procedure related to the adverse personnel actions that were the basis of his claims under the Act; namely, the alleged stalking and denial of his request for a secondary school office. *See Jordan v. Ector County*, 290 S.W.3d 404, 406 (Tex. App.—Eastland 2009, no pet.) ("We hold that such a grievance does not meet the requirements of Section 554.006(a) because it fails to address the termination, which is the subject of this lawsuit."). Prior to the alleged retaliation, Sikes was interviewed with regard to Riggins's original three complaints—the allegations that Shugart (1) instituted an illegal quota system, (2) used awards to create competition among the troopers, and (3) created a hostile work environment—however, Sikes's participation in a grievance procedure initiated by another trooper failed to satisfy the Act's prerequisite where his interview was wholly unrelated to the adverse personnel actions in his claims. The record on summary judgment does not contain any evidence that Sikes initiated or participated in a grievance procedure such that DPS was on notice of Sikes's allegations that he was being stalked by his supervisors and that the denial of his request for a secondary school office was retaliatory. In fact, because Sikes's request for a secondary office was denied *after* the lawsuit was filed, DPS was not given an opportunity to investigate and address the specific grievance before defending against it in court.

On appeal, Sikes argues that there was a genuine dispute of material fact as to whether his participation in the grievance procedure initiated by management is sufficient to satisfy the Act's prerequisite and invoke the district court's jurisdiction. In support, Sikes contends that in *Garrett v.*

*Judson Independent School District*, 299 F. App'x 337, 342 (5th Cir. 2008) (per curiam), this court implicitly recognized that an employee satisfies the Act's prerequisite where the employee either authorizes another person to initiate a grievance procedure on his or her behalf or participates in a grievance procedure to pursue his or her claim. However, Sikes's reliance on *Garrett* is misplaced because there is no evidence that Sikes authorized *anyone* to initiate a grievance on his behalf, much less a grievance regarding his allegations of retaliation. And Sikes's conclusory arguments on appeal do not suffice. *Ramey & Schwaller, L.L.P. v. Zions Bancorporation NA*, 71 F.4th 257, 261 (5th Cir. 2023) ("[U]nsupported allegations or . . . testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment[.]" (second alteration in original) (quoting *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997)).

Sikes's argument that it would have been "redundant and unnecessary" to initiate procedures that "were already in motion" also misses the mark because there is no evidence that Sikes complained of retaliation at any point during the ongoing grievance procedures. As a result, DPS was never afforded the opportunity to investigate Sikes's allegations of retaliation or resolve them prior to litigation.

We find that Sikes did not initiate action under DPS grievance procedures related to his retaliation claims prior to filing suit as required by the Act. Accordingly, we hold that the district court did not commit reversible error in dismissing Sikes's claims under the Act on summary judgment.

## B. Jurisdiction Over DPS's Cross-Appeal

We now consider whether we have jurisdiction over DPS's cross-appeal. Because DPS's Emergency Motion to Stay Pending Appeal provided

timely and sufficient notice of the cross-appeal under the applicable rules, we find that we do.

Pursuant to the Federal Rules of Appellate Procedure, an appeal "may be taken only by filing a notice of appeal with the district clerk within the time allowed by Rule 4." FED. R. APP. P. 3(a)(1). "[T]he notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from." FED. R. APP. P. 4(a)(1)(A). "If a document filed within the time specified by Rule 4 gives the notice required by Rule 3, it is effective as a notice of appeal." *Smith v. Barry*, 502 U.S. 244, 248–49 (1992). To act as a notice of appeal, a filing must set forth (1) the party taking the appeal, (2) the judgment being appealed from, and (3) the court to which the party is appealing. *See* FED. R. APP. P. 3(c)(1).

DPS's Emergency Motion to Stay Pending Appeal was filed within thirty days of the entry of the district court's Amended Final Judgment and satisfies each criterion of Rule 3. The motion (1) specifies that DPS is the party taking the appeal, (2) references the district court's Amended Final Judgment as the order being appealed, and (3) provides that the appeal will be made to this court. "[K]eeping in mind that Rule 3 must be liberally construed in favor of appeals," we find that DPS's Emergency Motion to Stay Pending Appeal acted as a notice of appeal and was filed within the time period prescribed in the rules; therefore, the jurisdictional requirement is satisfied. *United States v. Cantwell*, 470 F.3d 1087, 1089 (5th Cir. 2006) (citing *Smith*, 502 U.S. at 248).

### C. DPS's Renewed Motion for Judgment as a Matter of Law

Having concluded we have jurisdiction to consider DPS's cross-appeal, we now turn to the merits of the cross-appeal.

No. 22-40580

DPS challenges the district court's denial of DPS's Renewed Motion for Judgment as a Matter of Law, specifically whether Trial Plaintiffs satisfied the Act's prerequisite to suit and whether the trial evidence was legally sufficient to support the jury's findings as to Barton. We review the district court's ruling on a Rule 50(b) motion for judgment as a matter of law *de novo*. *Brown v. Bryan County*, 219 F.3d 450, 456 (5th Cir. 2000) (citation omitted). A motion for judgment as a matter of law is granted only if "the facts and inferences point so strongly and overwhelmingly in favor of one party that the [c]ourt believes that reasonable men could not arrive at a contrary verdict." *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008) (quoting *Brown*, 219 F.3d at 456). "We consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party." *Brown*, 219 F.3d at 456 (citation omitted).

Because each Trial Plaintiff initiated a grievance procedure under DPS rules regarding their retaliation claims under the Act, we find that Trial Plaintiffs satisfied the Act's prerequisite to suit. And because we conclude that a reasonable jury could find that Shugart did not act with respect to Barton's promotion request and that Barton's report was a but-for cause of Shugart's inaction, we find that the evidence is legally sufficient to support the jury's findings as to Barton.

### i. Prerequisite to Suit: Riggins and Mahan

DPS contends that Riggins's and Mahan's complaints to an OIG investigator regarding their transfers did not satisfy the Act's prerequisite because the purpose of the OIG procedure is to investigate rather than resolve a grievance. We disagree.

As stated above, prior to filing suit, the Act requires employees to initiate action under the grievance or appeal procedures of the employing

13

entity. Tex. Gov't Code Ann. § 554.006(a). In this case, the relevant procedures are set forth in the DPS Manual.

There is no question that both Riggins and Mahan reported to Lopez that they were being transferred and that they believed the transfers were retaliatory. And because both Riggins and Mahan complained to the OIG about their transfers, these complaints became the subject of a secondary OIG investigation and were directly addressed in a separate OIG report. The two OIG investigation reports, including the report addressing Shugart's alleged retaliation, were then provided to DPS management.

Thus, the only question is whether a DPS trooper can initiate the grievance process by complaining to the DPS OIG. To answer this question, we consider the DPS Manual and evaluate the function of the OIG division referral in this context. The DPS Manual encourages troopers to first engage in face-to-face meetings to resolve disputes. "If the discussions fail to result in resolution, then dispute resolution methods—such as conflict coaching, chain-of-command review, facilitation, or mediation—should be utilized. . . ." The manual defines "[d]ispute [r]esolution" as "[a]ny strategy or method used to resolve grievances, conflicts, or disputes, including, *but not limited to*, consultation with a dispute resolution officer, conflict coaching, chain-of-command review, facilitation, and mediation." The manual provides multiple options for employees to address their grievances. "In addition to the informal avenues for an employee to address grievances or concerns with management, *including* consulting with a dispute resolution officer and conflict coaching, there are two formal procedures that may be used." Nothing in the DPS Manual suggests this is an exhaustive list of the informal grievance procedures that an employee can use, and nothing prevents employees from utilizing other informal grievance procedures, such as reporting retaliation to the OIG.

DPS argues that while troopers can report retaliation to the OIG, such reports do not qualify as initiating grievance procedures under the Act because the OIG and DPS are functionally independent. However, the legal authority DPS cites in support of this contention is inapposite because it relies on grievance procedures specific to the City of Houston, not DPS. *See City of Houston v. Garcia*, 668 S.W.3d 419, 423–24 (Tex. App.—Houston [14th Dist.] 2023, no pet.); *see also City of Houston v. Cotton*, 31 S.W.3d 823, 825 (Tex. App.—Houston [1st Dist.] 2000, pet. denied).

Testimony from nearly every DPS official in the troopers' chain of command confirms that DPS employees can and were encouraged to address a grievance by reporting misconduct to their immediate supervisor or to the OIG. DPS's own brief chronicles the interaction between OIG and DPS department heads throughout a division referral, which provides for a resolution of employee grievances. Moreover, the evidence at trial showed that the OIG kept DPS apprised of its investigation, and both the OIG report of investigation and accompanying recommendations were provided to the DPS chief and DPS general counsel, who are authorized to decide the appropriate outcome.

For these reasons, Riggins's and Mahan's complaints to the OIG constituted actions under DPS's grievance procedures and thus satisfied the Act's prerequisite to suit.

### ii. Prerequisite to Suit: Barton

DPS contends that Barton, too, failed to satisfy the Act's prerequisite to suit because the February 8, 2019, letter does not reference Shugart's inaction and/or delay with respect to Barton's application to the Region 2 CNU. We conclude that Barton satisfied the Act's prerequisite to suit.

The parties agree that compliance with the Act's prerequisite to suit "does not require the use of particular words." *Ward v. Lamar Univ.*,

484 S.W.3d 440, 447 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The parties also agree that the February 8, 2019, letter to the Chief Dispute Resolution Officer invoked a grievance procedure under the DPS Manual. However, DPS argues that it was error to deny DPS's Renewed Motion for Judgment as a Matter of Law as to Barton because the February 8, 2019, letter did not provide DPS with fair notice of Barton's grievance. Specifically, DPS contends that the letter failed to address the personnel action that ultimately went before the jury at trial.

DPS cites *Montgomery County Hospital District v. Smith*, 181 S.W.3d 844 (Tex. App.—Beaumont 2005, no pet.), in support of its argument that notice of an unspecified action cannot satisfy the Act's prerequisite to suit. The *Smith* court found that "no reasonably prudent employer could have been subjectively aware" that the plaintiff intended to invoke the disciplinary appeal process by sending an email where the plaintiff's email made "no reference to [plaintiff's] desire to initiate [defendant's] appeal and grievance process." *Id.* at 850. In *Smith*, the plaintiff's email only requested that the employer "reconsider . . . the amount she was offered in severance pay," not the termination or job reassignment the plaintiff sought to challenge in court. *Id.* In the present case, by contrast, the February 8, 2019, letter is an attempt to initiate the grievance process with respect to a specified action, retaliation. It begins a consultation with a dispute resolution officer—a mechanism recognized in the DPS Manual—and the letter states that Barton suffered retaliation at the hands of Shugart.

DPS further argues that references to retaliation without specificity are insufficient because the *Garcia* court found that a plaintiff's statement that "*she may be retaliated against* for speaking out against the City" was insufficient to satisfy the Act's prerequisite. *Garcia*, 668 S.W.3d at 425. However, as the *Garcia* court explained, such statements are insufficient because the "language refers only to the *possibility* that Garcia might be

subjected to adverse personnel action in the future." *Id.* (emphasis added). Unlike the statements in *Garcia*, the February 8, 2019, letter addressed the troopers' whistleblowing accusations and provided that the retaliation had already occurred.

For these reasons, the letter was sufficient to put DPS on notice of Barton's intent to initiate a grievance procedure regarding Shugart's retaliation. Barton further clarified his grievance during his interview with Lopez when he identified Shugart's failure to respond to his promotion request as an example of retaliation by Shugart. Therefore, Barton satisfied the Act's prerequisite to suit.

### iii. Sufficiency of the Evidence: Barton

We now consider whether the evidence was legally sufficient to support the jury's verdict as to Barton. As stated above, we review the district court's ruling on a motion for judgment as a matter of law *de novo*. *Brown*, 219 F.3d at 456. "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (alteration in original) (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995)).

Because the evidence shows that Shugart never responded directly to Barton, we hold that a reasonable jury could find that Shugart did not act and/or delayed acting with respect to Barton's promotion request. We further hold that the evidence is legally sufficient to support the jury's finding that Barton's report of Shugart's misconduct was a but-for cause of Shugart's inaction and/or delay.

To prevail under the Act, a plaintiff must prove that he or she (1) is a public employee, (2) acted in good faith in making a report, (3) reported a violation of law by either an agency or employee, (4) made the report to "an

appropriate law enforcement authority," and (5) suffered retaliation. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 428 (5th Cir. 2003) (citation omitted). "While the Texas Whistleblower Act does not explicitly require an employee to prove a causal link between the report and the subsequent [retaliation], the Texas Supreme Court has held that [a] plaintiff must prove causation by a preponderance of the evidence." *Id.* at 430 (citing *City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 67 (Tex. 2000)).

On cross-appeal, DPS contends that no reasonable jury could find that Shugart failed to act with respect to Barton's promotion request, much less that Barton's whistleblowing caused Shugart to retaliate. As to whether Shugart engaged in retaliation, DPS points to evidence showing Shugart approved Barton's request for a recommendation approximately three hours after the request was made. In response, Barton argues that the same evidence DPS cites supports the jury verdict because Shugart's email approving Barton's request was sent only to Brazil. We agree with Barton.

The record shows that Shugart's email approving Barton's request was never sent to Barton, and in fact, it was not until litigation began that Barton learned of Shugart's approval. At trial, Barton testified that it was common practice to seek chain-of-command approval, and on most occasions his immediate supervisors responded to him "fairly quickly" with the requested approval. Moreover, the email soliciting applications for the Region 2 CNU, which Barton sent to Shugart along with his request, required "Chain-of-Command approval (via email)" and stated that "applications along with required documentation must be received by close of business on 01/17/2019." Considering this evidence, a reasonable jury could conclude that Shugart's failure to respond directly to Barton was a departure from the typical practice and constituted retaliatory inaction on Shugart's part.

Turning next to causation, DPS argues that the jury engaged in impermissible speculation when it concluded that Barton's report was a cause of Shugart's inaction and/or delay. "Texas courts have consistently held that '[c]ircumstantial evidence may be sufficient to establish a ca[us]al link between the adverse employment action and the reporting of illegal conduct.'" *Bosque v. Starr County*, 630 F. App'x 300, 306–07 (5th Cir. 2015) (per curiam) (alterations in original) (quoting *Zimlich*, 29 S.W.3d at 69). Here, we find that a reasonable jury could have relied on the available circumstantial evidence to conclude there was a causal link between Barton's report and Shugart's inaction. Not only did Shugart have knowledge of the troopers' reports against him, but he also expressed a negative attitude toward the troopers who reported him. Barton testified that in October 2018 Shugart accused him of "going rogue" and warned him that Shugart was aware of the ongoing investigation. Further, the retaliation took place while DPS and OIG were actively investigating the accusations regarding Shugart's misconduct. Even without engaging in what DPS labels "impermissible speculation," a reasonable jury could infer that Barton's report was a but-for cause of Shugart's inaction with respect to Barton's promotion request.

Viewing the evidence "in the light most favorable to the jury's determination," the evidence supports the jury's finding that Shugart failed to act on Barton's promotion request and that such inaction was caused by Barton's report of a perceived illegal quota system and other violations of DPS policy. *Harrington*, 118 F.3d at 367 (quoting *Hiltgen*, 47 F.3d at 700). Accordingly, we hold that the evidence is legally sufficient to support the jury's verdict as to Barton.

For the foregoing reasons, we find that the district court did not commit reversible error by denying DPS's Renewed Motion for Judgment as a Matter of Law.

### D. Amended Final Judgment

Finally, we turn to the district court's imposition of equitable relief in its Amended Final Judgment. We review the district court's decision to enter a corrected judgment under Federal Rule of Civil Procedure 60(a) for abuse of discretion. *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193 (5th Cir. 2011) (citation omitted). "But the determination of whether it is Rule 60(a) that authorizes the correction—as opposed to Rule 59(e) or Rule 60(b)—is a question of law that we review de novo." *Id.* (citation omitted).

Federal Rule of Civil Procedure 60(a) permits a district court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment." Although a court may exercise its authority under Rule 60(a) at any time, "it may do so only to provide 'a specific and very limited type of relief,' relief that is different in kind from an alteration or amendment of the judgment under Rule 59(e) or relief due to mistake or inadvertence under Rule 60(b)(1)." *Rivera*, 647 F.3d at 193 (footnote and citation omitted). "To be correctable under Rule 60(a), the 'mistake must not be one of judgment or even of misidentification, but merely of recitation, of the sort that a clerk or amanuensis might commit, mechanical in nature.'" *In re Galiardi*, 745 F.2d 335, 337 (5th Cir. 1984) (per curiam) (quoting *Dura-Wood Treating Co. v. Century Forest Indus., Inc.*, 694 F.2d 112, 114 (5th Cir. 1982)). Rule 60(a) "does not grant a district court carte blanche to supplement by amendment an earlier order by what is subsequently claimed to be an oversight or omission." *Id.*

"Our past decisions have looked to three criteria to determine whether a mistake can be corrected under Rule 60(a): (1) the nature of the mistake; (2) the district court's intent in entering the original judgment; and (3) the effect of the correction on the parties' substantial rights." *Rivera*, 647 F.3d at 193.

As to the first factor, the change to the judgment did not target a clerical mistake. The Amended Final Judgment awarded Trial Plaintiffs equitable relief. In its original Final Judgment, entered July 20, 2022, the district court awarded only compensatory damages.

As to the second factor, the district court explained that the omission of equitable relief was "erroneous[]." But the record contains no indication of the district court's intent to award equitable relief at the time it entered the original Final Judgment. During the hearing on October 19, 2022, the district court admitted it had "made a mistake" when it "overlooked" the component of equitable relief and entered the Final Judgment based solely on the jury's verdict. A court's "'own subsequent statements of [its] intent' are reliable evidence in the Rule 60(a) context." *Rivera*, 647 F.3d at 197 (citation omitted).

However, moving on to the third factor, the amendment here "impermissibly affects the parties' substantial rights." *Id.* at 199. Specifically, the amended judgment requires DPS to provide equitable relief that was not contemplated by the original judgment. *See Rutherford v. Harris County*, 197 F.3d 173, 190 (5th Cir. 1999) ("[C]orrection of an error in substantive judgment is outside the reach of Rule 60(a)." (citation omitted)). Accordingly, we find that it was error to amend the judgment under Rule 60(a) to impose equitable relief.

Trial Plaintiffs invite us to consider the district court's authority to amend the judgment under Federal Rule of Civil Procedure 59(e), which allows a party to file "[a] motion to alter or amend a judgment . . . no later than 28 days after the entry of the judgment." However, we decline to speculate beyond the plain language of the Amended Final Judgment to invoke this rule, particularly where the record shows the district court took under advisement Trial Plaintiffs' Rule 59(e) motion, DPS's response, and

the parties' oral argument and yet, the district court did not include any language in the Amended Final Judgment to suggest that it was applying its authority under Rule 59(e).

Because the district court's correction in the Amended Final Judgment was substantive and affected DPS's substantial rights by requiring specific performance that was not included in the original Final Judgment, we find the district court's imposition of equitable relief under Rule 60(a) was an abuse of discretion.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order granting DPS's Motion for Summary Judgment as to Sikes's claims under the Act, AFFIRM the district court's order denying DPS's Renewed Motion for Judgment as a Matter of Law as to Trial Plaintiffs' claims under the Act, VACATE the imposition of equitable relief in the Amended Final Judgment, and REMAND for further proceedings consistent with this opinion.